510 A.2d 914

Trinity Evangelical Lutheran Church of Clairton, Inc., a non profit corporation and Rev. D. Douglas Roth, Wayne Cochran, Harry Dinkel, Nadine Roth, Joann Reilly, Rebecca Fosbrink and William Fosbrink, Appellants *v.* Bishop Kenneth R. May on Behalf of the Western Pennsylvania-West Virginia Synod of the Lutheran Church in America, Appellees.

Argued March 12, 1986, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, BARRY, COLINS and PALLADINO.

*Thomas A. Crawford, Jr.,* for appellants.

*Roger C. Wiegand,* with him, *Kenneth K. Kilbert, Reed, Smith, Shaw & McClay,* and *James J. Dodaro* and *Dennis R. Biondo,* for appellees.

OPINION BY JUDGE ROGERS, June 11, 1986:

This case is the companion of *Reverend D. Douglas Roth v. Bishop Kenneth R. May, on behalf of the Western Pennsylvania-West Virginia Synod of the Lutheran Church in America,* 3623 C.D. 1984, filed this day. Both cases arise out of the actions of the pastor and some members of a local church congregation, Trinity Evangelical Lutheran Church of Clairton, Inc. (Trinity Lutheran), as sponsors or members of a group or movement called the Denomination Ministry Strategy. These actions were believed by the pastor and members of the congregation to be in the interests of unemployed steel workers in the Monongahela Valley of Western Pennsylvania.

The Lutheran Church in America (LCA), with which Trinity Lutheran is affiliated, is a nationwide hierarchical religious denomination incorporated under the laws of Minnesota. The LCA is divided into thirty-three synods, each of which is charged with the "oversight and advancement of the mission of the church within its bounds." The membership of each Synod "consist[s] of the congregations and ministers certified to it." Trinity Lutheran is a constituent church of the Synod of Western Pennsylvania-West Virginia.

The appellee, Bishop Kenneth R. May, is the Bishop of the Synod of Western Pennsylvania-West Virginia. The Bishop is the chief executive officer of the Synod.

The appellants are: Trinity Lutheran; the Reverend Mr. D. Douglas Roth, former pastor of Trinity Lutheran; Wayne Cochran, former president of the church council of Trinity Lutheran; Harry Dinkel, former vice president of the church council; Rebecca

Fosbrink, former treasurer of Trinity Lutheran; and Nadine Roth, Joann Reilly, and William Fosbrink, former members of Trinity Lutheran. They appeal from an order entered December 21, 1984, by the Honorable EMIL E. NARICK in the Court of Common Pleas of Allegheny County granting Bishop May's motion for a preliminary injunction filed with his complaint in equity alleging that the appellants, a faction of the congregation of Trinity Lutheran, had defied the lawful authority of the Synod, had assumed possession of the church property, and had excluded the Bishop's designated *locum tenens* from conducting services. The preliminary decree directed the appellants to deliver to the Synod the real and personal property of Trinity Lutheran and enjoined them from interfering with the Synod's control of Trinity Lutheran by physically preventing the Synod by its appointed *locum tenens* from conducting worship services and meetings at the Trinity Lutheran church edifice.

No final decree has been sought or entered.

At the hearing conducted by the Chancellor, the Constitutions and Bylaws of the LCA, the Synod and Trinity Lutheran were admitted into evidence. The LCA Constitution provides that each congregation shall, in its application for admission into the LCA, covenant to abide by the enactments of the LCA[1] and those of the Synod of which it becomes a member; and that:

> A synod may declare a congregation within its jurisdiction defunct if such congregation . . . has ceased to maintain religious services according to the tenets and usages of the Lutheran Church or if its membership has so diminished

---

[1] Article VI, Section 3 of the LCA Constitution. The governance of the LCA is by national conventions of the church which meet biyearly.

in numbers or financial strength as to render it impracticable for such congregation to fulfill the purposes for which it was organized, or to protect its property from waste and deterioration. In such case . . . all property of the congregation, real, personal and mixed, shall vest in the Synod, its successors or assigns.[2]

Trinity Lutheran's Constitution contains a substantially similar provision.

The evidence taken at the Chancellor's hearings shows that on October 16, 1984, the Executive Board of the Synod declared pursuant to §10.24(d) of the Synod's Constitution that effective October 17, 1984, the pastoral office held by the appellant the Reverend Mr. Roth should be vacant; that Bishop May then designated the Reverend Mr. Mont O. Bowser to be the pastor at Trinity Lutheran on October 21, 1984; that the Bishop requested the appellant Wayne Cochran, president of the church council, to arrange a meeting between the council and him to be held on October 22, 1984; and that Mr. Cochran effectively prevented the meeting.

On October 21, 1984, Mr. Cochran invited the Reverend Mr. Bowser to attend the church service, but told him that he would not be permitted to fill the pulpit notwithstanding Bishop May's instruction that the Reverend Mr. Bowser conduct the service. Despite the Synod's October 16, 1984 order that his pastoral office had been vacated, the Reverend Mr. Roth, wearing ministerial vestments, attended the October 21, 1984 church services and spoke to the congregation at that point in the service when the sermon is usually given. The Reverend Mr. Roth's actions were with the consent of the church council.

---

[2] Article VI, Section 8 of the LCA Constitution.

By letter dated October 26, 1984, Bishop May told the Reverend Mr. Roth that pursuant to Section II, Item 15(v) of the LCA Bylaws he was suspended from the office and functions of the ministry for willful disregard and violation of the Constitution and Bylaws of the Lutheran Church in America and of the Synod.[3] Bishop May also wrote that he was appointing the Reverend Mr. Bowser to conduct worship services at Trinity Lutheran on October 28, 1984. On that day, the appellant Harry Dinkel, a church council member, physically prevented the Reverend Mr. Bowser from conducting the service, which was then led by the Reverend Mr. Roth with the church council's approval.

On October 30, 1984, Bishop May brought an action in equity against the Reverend Mr. Roth and filed a motion for preliminary injunction, the grant of which is the subject of the companion case, No. 3623 C.D. 1984, first mentioned. After a hearing on November 2, 1984, the Chancellor granted Bishop May's motion for special injunction and ordered that the Reverend Mr. Roth desist from performing any pastoral functions at Trinity Lutheran and from interfering with pastoral functions performed at Trinity Lutheran by the pastors designated by the bishop and the Synod to perform such functions.

On November 3, 1984, the Trinity Lutheran Church council, without notice to Bishop May, adopted a resolu-

---

[3] Section II, Item 15(v) of the LCA Bylaws pertinently provides as follows:

[I]f the circumstances are such that, in the opinion of the bishop of the synod, the church would suffer material injury by the accused's continuing to exercise the office of the ministry during the progress of disciplinary procedures, the bishop of the synod may immediately suspend the accused from the office and functions of the ministry until the charges have been fully and finally decided by the synod.

tion that any pastors designated by Bishop May to fill the pulpit would be treated as trespassers.

On Sunday, November 4, 1984, the Reverend Mr. Roth went to Trinity Lutheran wearing his minister's vestments, preached a sermon, made statements in the course of the service, quoted gospel, and received new members into the church. The church council consented to the Reverend Mr. Roth's actions and a member of the council told the Reverend Mr. Bowser, the bishop's designate, that the pulpit was occupied. The Reverend Mr. Roth, dressed in his minister's vestments, was again at Trinity Lutheran on Sunday, November 11, 1984, and conducted the service. None of the church council members tried to prevent the Reverend Mr. Roth from conducting the service. A council member told the Reverend Mr. Bowser that the pulpit was filled.

The Reverend Mr. Roth was in jail on Sunday, November 18, 1984, for contempt of the Chancellor's order in the companion case at 3623 C.D. 1984. With the consent of the president of the church council, a tape recording of the Reverend Mr. Roth's voice quoting gospel was played to the congregation members who were handed sheets of paper containing a copy of the Reverend Mr. Roth's sermon. This practice was repeated on November 25, December 2, December 9, and December 16, 1984.

On November 28, 1984, the Synod had adopted a resolution declaring that pursuant to Article VI, Section 8 of the LCA Constitution, the congregation of Trinity Lutheran was defunct because it had "ceased to maintain religious services according to the tenets and usages of the Lutheran Church" and that Trinity Lutheran's property was "imminently subject to 'waste and deterioration.' " In a letter dated November 29, 1984, Bishop May wrote to members of Trinity Lutheran, stating that in accordance with Article VI,

Sections 8 and 11 of the LCA Constitution, they were obliged to deliver to the Bishop's representatives the real and personal property of Trinity Lutheran and fixing the date December 3, 1984 for this action. Some of the church members, the appellants, refused to comply with the request.

The evidence also includes the testimony of an employee of a local banking institution. She testified that on November 13, 1984, Wayne Cochran, Harry Dinkel, and Rebecca Fosbrink, members of the church council, withdrew $9,398.15 from the bank account of Trinity Lutheran and closed the account. The bank witness stated that payment was by checks made out to the three church council members as individuals.

Mary Gehagen, a member of the Trinity Lutheran congregation until the Synod declared it defunct on November 28, 1984, testified that at a church council meeting on August 12, 1984, the Reverend Mr. Roth recommended that the council not renew the church's fire insurance policy because if the church building burned, the Synod would reap the benefits and would not rebuild the church because its congregation is small. She further stated that the Reverend Mr. Roth distributed letters in the City of Clairton attacking those members of the congregation who disagreed with him and his adherents and the Synod and that in one letter, the Reverend Mr. Roth called the congregation a nasty old guard. Ms. Gehagen also testified that for one week tents were set up on Trinity Lutheran's property and "really made a mess of the grounds" and that although the tents are no longer there, the area "doesn't look too much better."

Robert Cozad, an insurance broker, testified that he had written a fire and casualty insurance policy for Trinity Lutheran in 1980, that it was renewable on October 1, 1984, that the premiums were not paid, and

that the policies had lapsed. Appellant Wayne Cochran testified that since December 12, 1984, there has been a fire insurance policy in the amount of only $150,000 notwithstanding that the value of the church was at least $400,000 and possibly $667,000.

Kent Milton, a former member of Trinity Lutheran, testified that he received a notice on the church letterhead, copies of which had been "distributed all over town," announcing a meeting at Trinity Lutheran on November 1, 1984, and that he went to the meeting, where he saw the Reverend Mr. Roth standing in front of the pulpit with members of several trade unions. Mr. Milton testified that Ron Weisen, a union president, said that if people attending the meeting did not come forward and sign a paper in support of the Reverend Mr. Roth, they would not receive free food from a local food bank. Mr. Milton also testified that the Reverend Mr. Roth said that he had a list with the names of twenty-six people who were joining Trinity Lutheran as new members and that he would like everybody present to sign it. Appellant Wayne Cochran, the president of the church council, testified that some of the people who signed up to join Trinity Lutheran on November 1, 1984 were in fact admitted as new members.

In *Roberts v. School District of Scranton*, 462 Pa. 464, 468, 341 A.2d 475, 478 (1975), Mr. Chief Justice BENJAMIN R. JONES described the scope of review of the grant of a preliminary injunction as follows:

> As a preliminary consideration, we recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law

relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor. . . . 'In order to sustain a preliminary injunction, the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted.' (Citations omitted.) Zebra v. Pittsburgh School District, 449 Pa. 432, 437, 296 A.2d 748, 750 (1972).

Our review of the record leads us to conclude that there were reasonable grounds for the Chancellor to have entered this preliminary injunction and we will not disturb it.

Decree affirmed.

### ORDER

AND NOW, this 11th day of June, 1986, the decree of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.