513 A.2d 538

Presbytery of Donegal et al., Appellants *v.* Wayne Wheatley et al., Appellees.

Argued December 11, 1985, before President Judge CRUMLISH, JR., Judges ROGERS, CRAIG, DOYLE, COLINS and PALLADINO.

*Gregory M. Harvey,* with him, *Elizabeth L. Hoop* and *George W. McKeag,* of Counsel: *Morgan, Lewis and Bockius,* and *P. Richard Klein, Klein, Elicker, Head &amp; Knauer,* for appellants.

*Tom P. Monteverde,* with him, *Jean C. Hemphill, Monteverde, Hemphill, Maschmeyer &amp; Obert,* for appellees.

OPINION BY JUDGE DOYLE, July 29, 1986:

Before this Court is a church property dispute involving facts substantially similar to those in *Presbytery of Donegal v. Calhoun,* 99 Pa. Commonwealth Ct. 300, 513 A.2d 531 (1986) with which the present case was originally tried and later argued on appeal before this

Court. We write this separate opinion to address issues which are specific to this case.

As in *Calhoun*, the present case involves an action in equity filed by the Presbytery of Donegal (Presbytery) requesting that it be given control of all real and personal property in the possession of a local congregation, here the Faggs Manor Presbyterian Church (Faggs Manor).

Faggs Manor was founded as a local congregation prior to 1730 and later voluntarily affiliated with the United Presbyterian Church of the United States of America (UPCUSA). The congregation incorporated as a non-profit corporation in 1810, and throughout the years has acquired title to numerous properties upon which it built its present church structures. As was the case with the Coatesville Presbyterian Church in *Calhoun*, Faggs Manor became aware that the UP-CUSA intended to amend its denominational constitution to include language which would impose a trust on local church property in favor of the denomination. Because of certain doctrinal differences Faggs Manor had with the denomination which it believed might eventually cause it to leave the denomination, Faggs Manor determined that it should withdraw from the denomination immediately, while it could do so and still retain its property. Accordingly, upon the recommendation of its session, the congregation of Faggs Manor voted 138 to 21 to disaffiliate with the UPCUSA on May 3, 1981. On May 14, 1981, the Presbytery appointed an administrative commission to investigate the activities at Faggs Manor, and on June 16, 1981, gave the commission full powers of the local church session, including the power to control the use of the church's buildings and properties. The Presbytery brought an action in equity before the Court of Common Pleas of Chester County, seeking to enjoin the Faggs Manor session and congregation

from retaining the property of the local church and interfering with the administrative commission's exercise of its asserted authority.

The trial court heard the case together with the equity action in *Calhoun*, and filed a separate adjudication which incorporated by reference the relevant findings and conclusions of the *Calhoun* case. The trial court concluded that there was no express or implied trust in the property of the local church in favor of the UPCUSA denomination, and thus dismissed the Presbytery's complaint.

Many of the issues raised on appeal were addressed in our *Calhoun* opinion, which applied the holding of *Beaver-Butler v. Middlesex Presbyterian Church*, 507 Pa. 255, 489 A.2d 1317 (1985), *cert. denied*, U.S. , 106 S. Ct. 198 (1986), and found that the trial court made the correct decision under the "neutral principles approach" adopted by that case. Our determination in *Calhoun*, of course, is controlling as to those same issues here. In the present case, however, the Presbytery raises additional arguments based upon language appearing in certain of Faggs Manor's property deeds.

Reference is made to language in a 1760 deed to land on which the present church stands, stating:

> [I]n trust only to and for the use, benefit and behoof of the people of the said Presbyterian Congregation forever in the manner following, that is to say that the . . . land shall be and continue to be a place for a house of public worship . . . for the use and service of the said Congregation or people called Presbyterians forever who do or shall hold and continue to hold the system of doctrine contained in the Westminster Confession of Faith & Directory agreeable to the present interpretation of the Synod of New York and Philadelphia to which they are now united.
> . . .

The same recital of trust also appears in three other deeds to church property, dated 1833, 1840, and 1843.

The Presbytery argues that the provision requiring adherence to "the system of doctrine contained in the Westminster Confession of Faith & Directory" creates a trust in the UPCUSA because the same confession of faith and directory still make up part of the denomination's constitution. The Presbytery contends that the trial court erred in resolving this issue by making the following finding of fact:

> 14. At all times before and since May 3, 1981, Faggs Manor has adhered to and maintained the same mode of faith and church discipline as that set forth in the Westminster Confession of Faith & Directory of Worship as interpreted in the 17th and 18th centuries. . . .

We agree with the Presbytery that the trial court had no authority to make this finding. It is improper for a trial court to determine whether a religious group adheres to, or has departed from, a particular doctrine or belief. Such a determination follows the "departure from doctrine" rule of judicial review expressly rejected in *Watson v. Jones,* 80 U.S. 679 (1871), and found unconstitutional in *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94 (1952). The rationale for these decisions was recently restated by the court in *Middlesex:*

> [T]he right to practice one's belief and worship as one chooses is so deep a root of our constitutional culture that a court, even one with the best intentions, can be no more than a clumsy intruder into the most delicate and sensitive areas of human life. . . . The view of a court as to who are heretics among warring sects is worth nothing, and must count as nothing if our cherished diversity of religious views is to prevail.

507 Pa. at 260, 489 A.2d at 1320. The Presbytery contends that since the deed could not be construed without an interpretation of doctrine, the trial court was required to apply the "deference rule" and defer to the opinion of the highest governing body of the religious institution. As stated in *Watson v. Jones,* the deference rule requires that:

> Whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and binding on them in their application to the case before them.

80 U.S. at 727. We recognize that the *Middlesex* court, although establishing the "neutral principles approach," reaffirmed the deference rule in cases where the issue in dispute is doctrinal in nature. 507 Pa. at 264, 489 A.2d at 1322. We cannot conclude, however, that an application of the deference rule to the facts of this case would result in a ruling favorable to the Presbytery.

First, the findings of the trial court indicate that the Faggs Manor Church voted to leave the UPCUSA denomination on May 3, 1981. We agree with the trial court when it found, as it also did in the *Calhoun* case, that since the UPCUSA constitution neither prevented nor penalized member churches from disaffiliating from the denomination, Faggs Manor's action effectively terminated the authority of the Presbytery and the denomination over it. Therefore, these bodies are no longer the "highest church adjudicatories" in this matter, and their decisions are not entitled to deference by the Court. Once it became independent of the denomination, the highest governing body of the Faggs Manor Church became the Session of that Church and as to *its* decision concerning the deed language, the Court found

that the session reaffirmed "its continued adherence and conformity to the Westminster Confession of Faith & Directory" immediately before disaffiliating. This decision was ratified by the congregation in its subsequent vote to disaffiliate from the denomination.[1]

Secondly, even assuming, *arguendo,* that the Presbytery and the UPCUSA *did* continue their governing authority over Faggs Manor despite that church's vote to disaffiliate, we can find no "decision" by these bodies to which to defer. The Presbytery contends that because of Faggs Manor's actions, the Presbytery is now the proper beneficiary of the deed's trust. Since the deed's trust is directed to the Presbyterian congregation that adheres to the doctrine of the Westminster Confession of Faith & Directory, the Presbytery, in order to succeed, must first itself determine that the Faggs Manor congregation no longer adheres to this doctrine. We have reviewed the record and can find no evidence that this determination was *ever* made, either before or after the church's vote to disaffiliate.

Indeed, the Presbytery does not even *allege* that the Faggs Manor Church has departed from the *religious doctrine* mentioned in the deed. Instead it argues that since the "Directory" portion of the Westminster Confession of Faith & Directory was the precursor to the UPCUSA's present form of government, Faggs Manor

---

[1] Such congregational action may itself have been determinative in construing the 1760 and 1833 deeds, which contained the following additional provision:

> Provided always, in order to prevent lawsuits, that in case it be disputed in Time coming whether any particular persons are members of the said congregation, or any debates shall arise in relation to pews in the said House of Worship, that all such debates and all others of a civil nature respecting the said Tract of Land and House of Worship shall be finally determined by a majority of votes of the adult male members of the said congregation. . . .

departed from the "Directory" by renouncing the jurisdiction of the denomination. The deed language, however, clearly states that the trust is to those who hold "*the system of doctrine contained in*" the Westminster Confession of Faith & Directory. The Presbytery never alleged a departure from this doctrine and thus never presented the court with a religious doctrinal dispute such as could be resolved by an application of the deference rule.[2]

For these reasons, and for reasons mentioned in the companion case of *Calhoun,* we shall affirm the order of the trial court.

ORDER

Now, July 29, 1986, the order of the Court of Common Pleas of Chester County, No. 146, Term 1981, dated June 18, 1984, is hereby affirmed.

Judge MACPHAIL did not participate in this decision.

---

[2] Apparently, while the Presbytery properly objected to the trial court's attempt to determine Faggs Manor's doctrinal stance, the Presbytery has not disputed the accuracy of that determination.