513 A.2d 1131

Board of Bishops of The Church of the Living God et al., Appellants *v.* John Milner et al., Appellees.

Argued April 9, 1986, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, BARRY and COLINS.

*Garnita M. Selby,* with her, *Herbert J. Hutton,* for appellants.

*Roland J. Atkins, O'Brien and O'Brien Associates,* for appellees.

OPINION BY JUDGE DOYLE, August 13, 1986:

Before this Court is a property dispute between a local church congregation and its religious governing body, the Board of Bishops. The denomination in question is known as "The House of God which is The Church of the Living God the Pillar and Ground of the Truth" and has affiliated churches in a number of states. In religious matters, the denomination is governed by a document called "The Discipline of the House of God."

The House of God denomination was founded by Bishop A.H. White. Bishop White was designated by

the Discipline as President General of the denomination for life and, until his death in 1981, exercised ultimate authority in the denomination. He also established the first local congregation in Philadelphia, Pennsylvania, and was its pastor until his death. On June 28, 1919, this congregation was incorporated as a Pennsylvania non-profit corporation known as The House of God which is The Church of the Living God the Pillar and Ground of the Truth, Inc. (corporation). In 1949, the local congregation, through its board of trustees, purchased its present church edifice at 58th and Thompson Streets in Philadelphia in the name of the corporation. This church edifice became known as "the National Temple", and each year the denomination would hold its General Assembly meetings there.

The present dispute arose upon the death of Bishop A.H. White in 1981. Shortly before his death, Bishop A.H. White appointed his son, Bishop Raymond White, to succeed him as pastor of the local congregation and as President General of the denomination. Upon Bishop A.H. White's death, other bishops in the denomination, represented by the Board of Bishops, disputed the authority of Bishop Raymond White. On October 8, 1981, members loyal to Bishop Raymond White sought the trial court's equitable jurisdiction to enjoin the other Bishops from holding a General Assembly for the purpose of electing a new Senior Bishop and President General of the denomination. The trial court denied the request for injunction, and ordered that the General Assembly proceed under the supervision of a court appointed master. As a result of the General Assembly proceedings Bishop J.H. Smith was elected as the new President General.

On October 25, 1981, the Board of Bishops notified Bishop Raymond White to vacate his position as pastor of the local church in Philadelphia. As a result, the

present action was filed by members of the local congregation seeking to enjoin interference with Bishop White's exercise of duties as a local pastor. The court permitted Bishop White to remain as pastor until October 23, 1982, when the Board of Bishops excommunicated him from membership in the denomination. After unsuccessful attempts at reconciliation during the litigation, the local congregation decided to sever its affiliation with the denomination and thus presented as the sole remaining issue before the trial court the question of whether the local congregation was the legal owner of the church edifice at 58th and Thompson Streets.

The trial court found that the local church property was deeded in the name of the corporation and that the corporate charter made no mention of a parent body. The court further found that the local church was purchased and maintained by the local congregation without assistance from the denomination, and was at all times managed by a local board of trustees. The court thus concluded that title to the real estate at 58th and Thompson Streets was vested in the trustees of the local church, and issued an order to that effect. The defendant in the case, the Board of Bishops, filed exceptions to the court's order, which were denied by an opinion and order dated November 14, 1983. It is from this order that the Board of Bishops brings its present appeal to this Court.

On appeal, the Board of Bishops argues that the trial court should have found that the denomination is hierarchically governed, and that therefore title to the real property is in the denomination. Subsequent to the filing of this appeal, however, the Pennsylvania Supreme Court issued its opinion in *Presbytery of Beaver-Butler v. Middlesex Presbyterian Church,* 507 Pa. 255, 489 A.2d 1317 (1985), *cert. denied,* U.S. , 106 S.

Ct. 198 (1986), which established the "neutral principle approach" as the proper standard in the resolution of disputes over property among religious bodies. This approach, enunciated in *Presbyterian Church in the United States v. Blue Hull Memorial Presbyterian Church,* 393 U.S. 440 (1969), holds that where a church dispute is not doctrinal in nature, the court is to resolve the dispute by the application of neutral principles of contract and deed interpretation. Only where the dispute is doctrinal in nature is the court to defer to the highest governing body of the church in accordance with the "deference rule" first set forth in *Watson v. Jones,* 80 U.S. 679 (1871). In *Middlesex,* as in this case, the dispute centered upon the ownership of certain church property. Although the denomination in *Middlesex* possessed a hierarchical form of church government, the Supreme Court relied on applicable deed and contract provisions, and concluded that since the property was deeded to the local congregation with no express language creating a trust in favor of the denomination, title to the property belonged to the local congregation. 507 Pa. at 269-70, 489 A.2d at 1324-25. *See also Presbytery of Donegal v. Calhoun,* 99 Pa. Commonwealth Ct. 300, 513 A.2d 531 (1986); *Presbytery of Donegal v. Wheatley,* 99 Pa. Commonwealth Ct. 312, 513 A.2d 538 (1986). In light of *Middlesex* and the cases which have followed, it is clear that regardless of the form of government of the church in question, the court must examine the relevant deed and contracts to determine ownership of disputed property.

In the present case the court found that the local church property was deeded to a Pennsylvania nonprofit corporation known as The House of God which is the Church of the Living God, the Pillar and Ground of the Truth, Inc. The court further found that the corpo-

ration consisted of members of the local congregation. In addition, there was no reference in the deed or the corporate charter to any national denomination. Finally, the court found that the Church Discipline was silent on the issue of ownership and control of real property. Applying neutral principles of property law to these facts, we conclude that the trial court correctly awarded the property to the local trustees on behalf of the named party in the deed, the corporation.

The Board of Bishops agrees that title to the local church property is in the Pennsylvania non-profit corporation, but disputes the trial court's finding that the corporation consists of members of the local congregation. The Board of Bishops contends that the corporation consists of members of the national denomination, and that the Board as its governing body has authority over it. In support of its claim the Board points to language in the Church Discipline which states as follows:

### HISTORY

The House of God which is the Church of the Living God, the Pillar and Ground of Truth, incorporated June 28, 1919, in Pennsylvania, is the Parent body and has jurisdiction over all other incorporations or charters working with Bishop A. H. White in any state in the United States with similar names. . . .

The trial court found, however, that the Church Discipline governed the denomination only with respect to *religious* matters. This finding was supported by evidence which suggested that, with respect to church government, the actual custom and practice within the denomination deviated substantially from the provisions of the Church Discipline. On the basis of this finding the trial court could properly conclude that the Discipline's statements on the issue of corporate authority were not authoritative.

Even assuming, however, that the quoted language is authoritative, it does not resolve the issue of the *ownership* of the corporation, but merely states that the corporation has preeminent jurisdiction over all other incorporations. Such jurisdiction could be exercised by a local congregation as easily as it could by a national board of bishops, and thus this statement does not itself indicate which of the two groups has ownership of the corporation.

Contrary to the assertions of the Board of Bishops, we believe that the evidence presented supports the trial court's finding that the corporation consisted of the members of the local congregation. The corporate charter states that "the members of the said corporation shall be adults in good standing in the Church. . . ." The Charter also provides that the corporation shall have the power to "hold, purchase, acquire, sell, transfer and convey . . . real estate," and names seven local members as its board of trustees. In 1949, these trustees or their successors, under the direction of the pastor and members of the local congregation, purchased the present real estate in the name of the corporation. Since that time, all expenses including mortgage payments and maintenance on the property have been paid by the members of the congregation. It is clear that through their actions the congregation and its elected trustees have consistently acted on behalf of, and exerted control over, the corporation.

In contrast, the Board of Bishops presented no evidence to indicate that the corporation represented any larger body in the denomination. There was no evidence that a denominational entity ever acted on behalf of the corporation, used its name, or exerted control over the corporation. Indeed, there was apparently no national board of trustees in existence through whom corporate affairs could be administered. In view of this

evidence we must conclude that the trial court did not err in finding that the corporation was made up of the members of the local congregation.

Finally, the Board of Bishops contends that the trial court was without authority to intervene in what it characterizes as purely ecclesiastical matters. The Board does not indicate, however, what portion of the court's adjudication it finds offensive. Our own review indicates that the court was particularly careful to refrain from deciding religious matters. The court consistently refused to review the propriety of the decision of the Board of Bishops, such as the excommunication of Bishop Raymond White, specifically noting that courts were "precluded from inquiring into ecclesiastical questions." The trial court instead limited itself to a consideration of the ownership of the real property in question. In light of *Middlesex*, the court's adjudication and order were clearly appropriate and did not interfere with any religious or doctrinal matters.

For these reasons we conclude that the trial court properly awarded the property in question to the local congregation. Accordingly, we affirm the order of that court.

## ORDER

Now, August 13, 1986, the Order of the Court of Common Pleas of Philadelphia County, No. 4405 November Term, 1981, dated November 14, 1983, is hereby affirmed.