631 A.2d 1097

**Dr. Gerald E. POESNECKER, Dr. Harold E. Buttram, and Vernon R. Briggs**

v.

**Paul P. RICCHIO, Frank Fedele, Jack C. Kindle and Peter A. Poulos, Appellants.**

Commonwealth Court of Pennsylvania.

Argued June 16, 1993.

Decided Sept. 17, 1993.

460

Paul S. Diamond, for appellants.

Robert G. Moffett, for appellees.

Before CRAIG, President Judge, and COLINS, PALLADINO, McGINLEY, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

KELLEY, Judge.

Appellants, Paul P. Ricchio, Frank Fedele, Jack C. Kindle, and Peter A. Poulos, (hereinafter collectively referred to as Ricchio) appeal from an order of the Court of Common Pleas of Bucks County denying Ricchio's post trial motions.[1] Also before this court for disposition is a motion to dismiss Ricchio's appeal filed by appellees, Dr. Gerald E. Poesnecker, Dr. Harold E. Buttram, and Vernon R. Briggs (hereinafter collectively referred to as Poesnecker).

The facts, as found by the trial court, are as follows. This matter involves a dispute within the "Grand Fraternity, Fraternitas Rosae Crucis, and All Associate Fraternities" (Fraternity). The headquarters of these organizations is located in Hilltown Township, Quakertown, Bucks County, Pennsylvania. This site is known as Beverly Hall.

Beverly Hall is the center of several organizations founded by R. Swinburne Clymer sometime prior to 1921 as an order of Rosicrucians. This society presumes to be the primary descendant of ancient religious, fraternal and mystical orders. It is not subordinate to any other existent order of Rosicrucians.[2]

---

1. This court has jurisdiction pursuant to 42 Pa.C.S. § 762(a)(5) (certain private corporation matters).

2. The Encyclopedia Britannica, 1965 Ed., under "Rosicrucianism", states, in part:

> There are Rosicrucian societies, fraternities, orders, fellowships or lodges in most countries of the modern world. Some of them are very active; others are obscure and highly secret; some seem to be primarily religious in their emphasis, and some categorically deny that Rosicrucianism is a religion, holding rather that it is a philosophy, making use of the most modern scientific methods and techniques, as well as the methods of the occultist, the mystic and the seer, in the quest for truth....
>
> R. Swinburne Clymer, [was] head of a rival U.S. order with headquarters at Quakertown, Pa., who as early as 1902 published *The Rosicrucians: Their Teachings*.... His organization, traced through a definite line of Rosicrucian adepts in the U.S. from revolutionary times, with Paschal Beverly Randolph and Freedman B. Dowd as his most immediate predecessors, is known as the Fraternitas Rosae Crucis. Its foreign affiliation was with La Federation Universelle des Ordres, Societes et Fraternites des Inities.

This organization consists of a composite group of bodies pronounced to exist by R. Swinburne Clymer under "Organic Laws" drafted by him and executed on December 17, 1962. The preamble to the Organic Laws provides as follows:

## PREAMBLE

The Grand Fraternity, Fraternitas Rosae Crucis, the AEth Priesthood, the Order and Temple of the Rosy Cross, and all the Associate Fraternities, Orders, Temples and Societies, have, since 1614 to date, constituted A Hierarchy, and as such all authority and power to govern, rule and regulate them has, in accordance with the ancient laws, landmarks, established customs and fixed practices of the August Fraternity, been vested in, and conferred upon, the Supreme Grand Master, and him alone, as Supreme Hierarch.

In strict compliance with such ancient laws, landmarks, established customs and fixed authority, and by virtue of the power and authority vested in me as Supreme Grand Master of the Fraternitas Rosae Crucis, Supreme Grand Master of all the Associate Fraternities, Orders, Temples and Societies, Brotherhood of the Order and Temple of the Rosy Cross, Supreme Hierarch and High Priest of the Priesthood of AETH, Director General of the Confederation of the Initiates, Director General of the Church of Illumination, President and Director General of the Beverly Hall Corporation, and President and Director General of the Beverly Hall Foundation, Inc., I, R. SWINBURNE CLYMER, do hereby make these Articles the Organic Law of the August Fraternity and declare that they shall be unequivocally binding upon the present Supreme Grand Master and all succeeding Supreme Grand Masters and full and complete compliance therewith and obedience thereto is mandatory.

Failure on the part of any Supreme Grand Master to comply with the letter or spirit of any of the provisions herein contained shall be just cause for the removal of such Supreme Grand Master from office....

The society is in part religious in nature through a subsidiary body called "The Church of Illumination". It also conducts all business through a Pennsylvania nonprofit corporation named Beverly Hall Corporation. Beverly Hall Corporation was founded at the same time as the Fraternity, sometime prior to 1921. A decree of incorporation was entered on May 25, 1921. The designated purpose was "for the organization and maintenance of an institution for education, religious and fraternal purpose of its members...."

The Certificate of Incorporation provides for members to be accepted in accordance with its bylaws. Bylaws were submitted to the trial court; however, the date and manner of their enactment is not apparent. Appended to the document embodying the bylaws were minutes of a July 16, 1965 meeting of the members of the nonprofit corporation in which the three persons present were designated as its members.

The Fraternity owns all property in the name of Beverly Hall Foundation, also a nonprofit corporation. The Beverly Hall Foundation was originally incorporated as of July 8, 1941. The purpose of the Foundation is to hold title to the "property, real and personal, of Beverly Hall Corporation."

The Organic Laws, written by R. Swinburne Clymer, are intended to be the guiding principles under which the various organizations are to operate. This document provides, *inter alia,* that the Supreme Grand Master is to select his successor from a Council of Three. The Organic Laws also designate a Council of Seven as a separate entity under the jurisdiction of the Supreme Grand Master and Director General with the power to act in cases of emergency.

R. Swinburne Clymer died in 1966, and pursuant to his designation, his son, Emerson M. Clymer succeeded to the position of Supreme Grand Master. On October 4, 1983, Gerald Poesnecker (Mr. Poesnecker) assumed the office of Supreme Grand Master, pursuant to documents executed by Emerson Clymer.

In this capacity, Mr. Poesnecker assembled the fraternal/religious leadership of the several organizations and assumed to

act as the chief executive engaging in the administrative, financial and business functions. The financial records and internal controls relating to the business affairs of the several organizations were inadequate when Mr. Poesnecker assumed leadership. The trial court found that these functions and processes had not improved under Mr. Poesnecker's control.

The Council of Seven met in August of 1987 and in May 1988. At these meetings, appellee Frank Fedele raised numerous questions concerning Mr. Poesnecker's accountability, financial dealings and general performance as Supreme Grand Master.

There is a dispute between the parties hereto over the consequences of these meetings of the Council of Seven. Poesnecker alleges that at the meeting in May 1988 there was an unequivocal vote of confidence. Ricchio alleges that the vote was a conditional approval subject to Mr. Poesnecker meeting certain conditions, including correction of the administrative problems involving the corporations.

Pursuant to this warning, a Council of Seven meeting was held on September 12, 1989 to depose Mr. Poesnecker as Supreme Grand Master and designate a replacement. As a result, Ricchio and other disenchanted leaders took over and physically occupied various buildings and administrative offices at Beverly Hall.

Thereafter, Poesnecker instituted an action in equity in the trial court to enjoin the dissident group from interfering with the functions of Mr. Poesnecker in the administration of the several organizations. Several hearings were held before the trial court between September 19, 1989 and December 19, 1990. On February 5, 1992, the trial court entered a decree nisi ordering that:

1. Gerald Poesnecker's position as Supreme Grand Master of the Grand Fraternity, and similar positions in the related orders, are not disturbed;

2. The Council of Seven shall be as last appointed by Poesnecker, in accordance with the provisions of the Organic Law;

3. The said Supreme Grand Master or the Council of Seven shall have no control over the property, assets, funds or revenues generated by its activities, in that said property shall be in the control of Beverly Hall Corporation and Beverly Hall Foundation respectively;

4. A custodian/receiver is appointed to:

 a. Determine the membership of the corporations; and

 b. Conduct a plebiscite of said membership for the purpose of making appropriate clarifying amendments to the Articles of Incorporation, and to provide for the election of directors, and, if appropriate, officers of the corporations; and otherwise in accordance with the provision of 15 Pa.C.S. § 5764;

5. Pending the election process, the custodian/receiver shall take full control over the property, receipts and expenditures of the corporations;

6. The said custodian/receiver shall be compensated for his or her services by the said corporations, in amounts subject to approval by the Court; and

7. Upon completion of his or her functions, the custodian/receiver shall return control of the management and assets of the corporations to the elected directors and officers thereof.

After the filing of post-trial motions by both Poesnecker and Ricchio, and upon agreement of the parties, the trial court appointed a custodian/receiver with an agreed order entered on May 27, 1992 and further supplemented by order dated June 23, 1992. By order dated January 14, 1993, the trial court denied the post-trial motions of Poesnecker and Ricchio. It is from that order that Ricchio now appeals to this court.

Ricchio raises the following three issues on appeal:

1. Whether the trial court violated the First Amendment to the United States Constitution and article I, § 3 of the Pennsylvania Constitution by improperly determining the entirely religious question of who should be the spiritual leader of a secret, hierarchical, religious organization;

2. Whether the trial court violated the Federal and Pennsylvania Constitutions by directing the court's appointed custodian to hold a plebiscite of all members of the secret religious organization to select the directors and officers of the religion's corporate arm; and

3. Whether the trial court violated the Federal and Pennsylvania Constitutions by removing Poesnecker from his corporate positions while, in contravention of religious law, retaining him in his religious leadership position.

## I. MOTION TO DISMISS

Before addressing the merits of Ricchio's appeal, we will first address Poesnecker's motion to dismiss pursuant to P.R.A.P.1972(5) [3] and Pa.R.A.P. 302(a) [4].

Poesnecker contends in the motion to dismiss that none of the issues for review outlined in Ricchio's statement of issues for review under Pa.R.A.P. 2154(a) [5] before this court were in any manner or degree, included within Ricchio's motion for post trial relief filed with the trial court pursuant to Pa.R.C.P. No. 227.1 nor were the issues raised by Ricchio in pre-trial or trial proceedings. The issues outlined in Ricchio's statement of issues for review with this court are essentially the same as set forth above in this opinion.

It is well settled that an appellate court will not consider on appeal issues not raised in the trial court. *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114

---

**3.** Pa.R.A.P. 1972(5) provides:

> Subject to Rule 123 (applications for relief), any party may move:
> . . . .
> (5) To dismiss for failure to preserve the question below, or because the right to an appeal has been otherwise waived. See Rule 302 (requisites for reviewable issue) and Rule 1551(a) (review of quasijudicial orders).

**4.** Pa.R.A.P. 302(a) provides as follows:

> **(a) General Rule.** Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.

**5.** Pa.R.A.P. 2154(a) provides, in part, as follows:

> **(a) General Rule.** [A]ppellant shall, ... file ... a brief statement of issues which he intends to present for review.

(1974). Therefore, any issue not raised before the trial court is clearly waived on appeal. *See* Pa.R.A.P. 302(a).

In the present case a review of the record, the trial court's opinion accompanying its decree nisi entered on February 5, 1992 and the trial court's opinion accompanying its order of January 14, 1993, denying the parties post trial motions, clearly reveals that the issues Ricchio now raises on appeal to this court were considered in the trial court. Accordingly, Poesnecker's motion to dismiss is denied.

## II. MERITS

### A. DETERMINATION BY TRIAL COURT OF WHO SHOULD BE SUPREME GRAND MASTER

■ Ricchio argues that the trial court contravened the decisions of the United States Supreme Court as well as other courts by interpreting religious texts and practices and determining that Mr. Poesnecker is the Fraternity's Supreme Grand Master.

■ The trial court in this case recognized that the courts must apply a rule of deference with regard to the internal workings of a religious organization. In *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), the United States Supreme Court iterated the constitutional mandate known as the deference rule initially set forth in *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1872),[6] and constitutionalized in *Kedroff v.*

---

**6.** In *Watson,* members of a local church fell into conflict when the national body required their members to disavow slavery as a moral evil. Certain members of the local church refused compliance and seized the local church property. The national body brought suit to regain possession of the church property. While deciding *Watson* on nonconstitutional grounds, the United States Supreme Court set forth the time honored deference rule.

The United States Supreme Court in 1871 defined the deference rule as:

> whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them in their application to the case before them.

*St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952).[7] The deference rule provides that civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical policy on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. *Serbian Eastern Orthodox Diocese*, 426 U.S. at 713, 96 S.Ct. at 2382.

The Pennsylvania Supreme Court recognized the wisdom of the *Watson* court's deference rule in *Presbytery of Beaver–Butler v. Middlesex*, 507 Pa. 255, 260, 489 A.2d 1317, 1320, *cert. denied*, 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985), when it wrote:

> [T]he right to practice one's belief and worship as one chooses is so deep a root of our constitutional culture that a court, even one with the best intentions, can be no more than a clumsy intruder into the most delicate and sensitive areas of human life. When Caesar enters the Temple to decide what the Temple believes, he can leave behind only his own views. The view of a court as to who are heretics among warring sects is worth nothing, and must count as nothing if our cherished diversity of religious views is to prevail.

*Watson*, 80 U.S. (13 Wall.) at 727.

> The "deference rule", as the *Watson* ruling is familiarly known, was the beginning of an evolution from a previous doctrine known as the "departure from doctrine" rule, which had allowed courts to determine property rights if they found that a church body had departed from or changed their theological doctrines as to become something different from the intentions of their founders or members.

*Presbytery of Beaver–Butler v. Middlesex*, 507 Pa. 255, 260, 489 A.2d 1317, 1319–20, *cert. denied*, 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985).

7. The United States Supreme Court in *Kedroff* reaffirmed the deference rule and tied *Watson* to the First Amendment. *Kedroff*, 344 U.S. at 114–15, 73 S.Ct. at 153–54.. In *Kedroff*, it was held that First Amendment values would be jeopardized by permitting courts to resolve doctrinal disputes. The United States Supreme Court reasoned that what a court must do, is to look at the church rules and if the church is a hierarchical one which reposes determination of ecclesiastical issues in a certain body, the resolution by that body is determinative, while if the church is a congregational one prescribing action by a majority vote, that determination will prevail. *Id.* at 114–21, 73 S.Ct. at 153–57.

However, civil courts may resolve disputes involving churches that do not require a determination of ecclesiastical issues. *Middlesex*, 507 Pa. at 262, 489 A.2d at 1320–21. Church matters involving agreements on wills, trusts, contracts and property ownership are questions of civil law and are not predicated on any religious doctrine. *Id.* Therefore, in those situations, courts may apply principles of law which are religiously neutral, such as the statutes governing Pennsylvania nonprofit corporations.[8]

Initially, it is clear and the trial court was correct in determining that the ritual rules governing the position of Supreme Grand Master and the Council of Seven are doctrinal. Therefore, the next determination this court must make is whether there has been an adjudication by the highest judicatory body of the Fraternity removing Mr. Poesnecker from his position as Supreme Grand Master.

To determine if there was a decision from the highest judicatory body of the Fraternity removing Mr. Poesnecker as Supreme Grand Master, the trial court correctly applied the literal application of the Organic Law. It's clear from the preamble to the Organic Laws which govern the Fraternity that the organization is hierarchal in nature with the Supreme

---

8. The "neutral principles approach" was announced by the United States Supreme Court in *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). The neutral principles approach permits an independent review by a court concerning issues of a nonecclesiastical nature such as property disputes.

In *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), the United States Supreme Court pointed out the advantages of the neutral principles approach:

The primary advantages of the neutral principles approach are that it is completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and polity. The method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges. It thereby promises to free civil courts completely from entanglement in questions of religious doctrine, polity and practice. Furthermore, the neutral-principles analysis shares the peculiar genius of private-law systems in general—flexibility in ordering private rights and obligations to reflect the intentions of the parties.

*Jones*, 443 U.S. at 603, 99 S.Ct. at 3025.

Grand Master being the "Supreme Hierarch." (Reproduced Record (R.) at 9a–10a.) It is also clear from the Organic Laws that the Council of Seven is subordinate to the Supreme Grand Master with the Supreme Grand Master having unlimited authority to appoint and remove members from that Council. (R. at 18a.)

According to the Council of Seven Articles of Association, the Council of Seven may act in times of emergency such as when there is no Supreme Grand Master or by reason of other emergencies or extraordinary conditions. (R. at 765a.) For instance, under the Articles, the Council of Seven automatically becomes active and operative when the Beverly Hall Corporation or the Beverly Hall Foundation are endangered or threatened. (R. at 776a.)

As stated previously in this opinion, the Council of Seven met on September 12, 1989 and removed Mr. Poesnecker as Supreme Grand Master and designated his replacement. Under the literal interpretation of the Organic Law, this meeting did not result in a decision from the highest judicatory body of the Fraternity.

The record in this case shows that according to the Council of Seven Articles of Association, appellee Frank Fedele was named as an active member of the Council of Seven. (R. at 772a.) As found by the trial court, at the time of the September 12, 1989 meeting, appellee Frank Fedele had been removed by Mr. Poesnecker as a member of the Council of Seven. Fedele's removal by Mr. Poesnecker was within his power as Supreme Grand Master. (R. at 18a.) The September 12, 1989 meeting was called and attended by Fedele who was no longer a member of the Council of Seven.

In addition, notice of the proposed September 12, 1989 meeting was not given to all of the members of the Council of Seven. A vote was permitted by proxy which is not provided for under any of the Organic Laws. (R. at 9a–34a.)

Based on the foregoing, it must be concluded that Mr. Poesnecker was not removed from the position of Supreme Grand Master as a result of a decision of the highest judicato-

ry authority of the Fraternity. Accordingly, the trial court was correct in concluding that Mr. Poesnecker had not been validly removed as Supreme Grand Master.

If the trial court had found in its initial determination that the September 12, 1989 meeting of the Council of Seven was valid under the Organic Laws, then the trial court would have been bound by the deference rule to uphold the decision removing Mr. Poesnecker as Supreme Grand Master. In that situation, there would have been a decision rendered by the highest judicatory body of the religious Fraternity pursuant to the Organic Laws and the Council of Seven's Articles of Association wherein the Council has the authority to become active and operative when the Beverly Hall Corporation or Beverly Hall Foundation are endangered or threatened.

### B. *REVELATION OF NAMES OF MEMBERS OF THE SECRET RELIGIOUS ORGANIZATION*

 Next, Ricchio argues that the trial court violated the United States and Pennsylvania State Constitutions by directing the appointed custodian to hold a plebiscite of all members of the secret religious organization to select the directors and officers of the Fraternity's corporate arm.

As stated previously in this opinion, a civil court may resolve disputes involving religious organizations that do not require a determination of ecclesiastical issues. *Middlesex,* 507 Pa. at 262, 489 A.2d at 1320–21. These matters that the court may address involve property, contracts, and financial dealings. *Id.* Therefore, the trial court in this case properly applied the statutes governing Pennsylvania nonprofit corporations to the corporate arm of the Fraternity.

It is not disputed that the Beverly Hall Corporation and the Beverly Hall Foundation are nonprofit corporations pursuant to the Pennsylvania Nonprofit Corporation Law of 1988 (Law).[9] Under sections 5764 and 5981 of the Law, the trial court in this case was authorized to appoint a custodian of a nonprofit corporation to resolve a deadlock. 15 Pa.C.S.

9. 15 Pa.C.S. §§ 5101–6162.

§ 5764; 15 Pa.C.S. § 5981. In fact, Ricchio has consented to the appointment of a custodian by the trial court.

The trial court appointed a custodian with specific directions to determine the membership of the corporations and to conduct a plebiscite for the purpose of amending the bylaws and the election of proper directors and officers of the respective corporations. The trial court's order does not direct a plebiscite of all the members of the secret Fraternity or religious organization.

Under the Law, directors shall be elected by the members of the nonprofit corporation unless other methods have been adopted in the bylaws. 15 Pa.C.S. § 5725. In the present case, the bylaws of the Beverly Hall Corporation do not provide for the election of a board of directors. (R. at 35a–47a.) In addition, the bylaws of the Beverly Hall Foundation do not provide for any membership. (R. at 48a–63a).

Therefore, in order to comply with the Law, the membership of both the Beverly Hall Corporation and Beverly Hall Foundation must be determined and a plebiscite of all those members must be held to elect the officers and directors of these corporations.

This court recognizes and acknowledges that it may not force a mandatory disclosure of the secret membership list of the religious Fraternity. *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986); *Bates v. Little Rock*, 361 U.S. 516, 523, 80 S.Ct. 412, 416, 4 L.Ed.2d 480 (1960). While this court realizes that the memberships of the secret Fraternity and the two nonprofit corporations may overlap, it is clear that the trial court did not order that the Fraternity reveal the membership of its secret religious organization. Furthermore, any method chosen by the appointed custodian to determine the memberships of the two nonprofit corporations will be reviewed by the trial court thereby permitting the trial court to determine if the proposed method is constitutionally permissible.

Accordingly, the trial court did not violate the United States and Pennsylvania State Constitutions by ordering a plebiscite

of the members of the two nonprofit corporations at issue in this case.

## C. REMOVAL OF MR. POESNECKER FROM CORPORATE OFFICES

Finally, Ricchio argues that the trial court violated the United States and Pennsylvania State Constitutions by removing Mr. Poesnecker from his corporate positions while, in contravention of religious law, retaining him in his religious leadership position of Supreme Grand Master.

However, the trial court did not retain Mr. Poesnecker in his position as Supreme Grand Master. The trial court and this court have merely determined that there was no final decision of the highest judicatory body of the Fraternity removing Mr. Poesnecker from that position.

As discussed previously in this opinion, the trial court, as well as this court, are prohibited under the rule of deference from determining who is the proper person to occupy the position of Supreme Grand Master and from removing Mr. Poesnecker from that position. *Middlesex.* That is a doctrinal issue based on the ritual rules of the Fraternity. However, the trial court and this court on appeal may address church issues which are not doctrinal in nature. *Id.*

As a result, the removal of Mr. Poesnecker from his corporate positions under the Pennsylvania Nonprofit Corporation Law was well within the trial court's authority. Furthermore, Ricchio does not object to the removal of Mr. Poesnecker from his controlling corporate positions in the Beverly Hall Corporation and the Beverly Hall Foundation.

Ricchio argues that the Fraternity's Organic Law requires that the same individual head the organization's religious and corporate functions. (R. at 23a.) However, the procedure ordered by the trial court through an appointment of a custodian for the election of directors for the nonprofit corporations, does not prohibit the members of said corporations from restoring the position of Director General to the Supreme Grand Master if this is their desire.

Therefore, the trial court properly removed Mr. Poesnecker from his corporate positions while deferring from removing him from the position of Supreme Grand Master.

Accordingly, the order of the trial court denying Ricchio's post trial motions is affirmed.

## ORDER

NOW, this 17th day of September, 1993, the motion to dismiss filed by appellees is hereby denied, and the order of the Court of Common Pleas of Bucks County, dated January 14, 1993, at No. 89–7661–15–5, is hereby affirmed.

PELLEGRINI, J., concurs in result only.