THE AMERICAN CARPATHO—RUSSIAN ORTHODOX GREEK CATHOLIC DIOCESE OF THE U.S.A., by Metropolitan NICHOLAS, and Robert Salley, Appellants,

v.

THE CHURCH BOARD OF ST. MICHAEL'S ORTHODOX—GREEK CATHOLIC CHURCH OF CLYMER, Fred Julock, Edward Gaydosh, Denise Rusko, Eleanor Berezansky, John Berezansky, Fred Sebastian, Barbara Sebastian, Donna Kuzemchak, Patricia Tatarko, Fred Knapik, Kathy Amick, Helen Gaydosh, Daniel Kapcoe, Michael Gaydosh and William Gaydosh

Dan Kapcoe, Marcie Hanna and Robert Salley, individually and on behalf of St. Michael's Orthodox—Greek Catholic Church of Clymer, Appellants,

v.

The Church Board of St. Michael's Orthodox—Greek Catholic Church of Clymer, Fred Julock, Edward Gaydosh, Denise Rusko, Eleanor Berezansky, John Berezansky, Fred Sebastian, Barbara Sebastian, Donna Kuzemchak, Patricia Tatarko, Fred Knapik, Kathy Amick, Helen Gaydosh, Michael Gaydosh, and William Gaydosh.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 7, 2000.

Decided March 1, 2000.

Reargument and/or Reconsideration Denied May 10, 2000.

Michael N. Vaporis, Indiana, for appellants.

Gene E. Goldenziel, Scranton, and Thomas M. Bianco, Indiana, for appellees.

Before McGINLEY, J., PELLEGRINI, J., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

The American Carpatho–Russian Orthodox Greek Catholic Diocese of the U.S.A., by Metropolitan Nicholas and Father Robert Salley (collectively, Diocese) and Dan Kapcoe, Marcie Hanna and Robert Salley, individually and on behalf of St. Michael's Orthodox–Greek Catholic Church of Clymer (St.Michael's), appeal from orders of the Court of Common Pleas of Indiana County (trial court) determining that St. Michael's is congregational in nature and ordering an election for the Church Board pursuant to church by-laws.

The facts of this case are not in dispute. St. Michael's is located in Clymer, Pennsylvania. It was originally incorporated as the Greek Catholic Church of Clymer in 1907 for the purpose of worshiping God according to the faith, doctrine, discipline and usage of the Greek Catholic Church under the jurisdiction of the Roman Catholic Church. In 1935, St. Michael's broke its ties with the Roman Catholic Church and became a member of the Carpatho–Russian Orthodox Diocese. The American Carpatho–Russian Orthodox Diocese was established in the United States under the jurisdiction of the Ecumenical Patriarch of Constantinople, which also has under its jurisdiction in the United States the Greek Orthodox Church and the Albanian Orthodox Church. Although under the spiritual jurisdiction of the Ecumenical Patriarch, the Patriarch's "exarch" in the United States and the Archbishop of the Greek Orthodox Church (in America), the Diocese is administratively autonomous. While the various Orthodox churches are administratively separate, the authority of the presiding bishop or synod of bishops in a diocese has always been paramount.[1]

The present action arose when a majority of the Church Board[2] became dissatis-

1. Normally, an Orthodox church is a hierarchical church. An essential element in its structure is the Apostolic Succession of bishops. A bishop is appointed by God to guide and to rule the flock committed to his charge; he is a 'monarch' of his own diocese. Timo-thy Ware, *The Orthodox Church*, Penguin Books, 1973, pp. 252–253.

2. Those individual members of the Church Board named as Defendants in the first action included: Fred Julock, Ed Gaydosh, Denise

fied with their parish priest of 28 years, Father Robert Salley (Father Salley). On July 31, 1998, the Church Board took action to terminate his service from the parish and served him with a Notice to Quit, evicting him and his family from the residence provided to the parish priest as part of his compensation. Following the Church Board's attempt to terminate Father Salley's service and evict him and his family from church property, Metropolitan Nicholas, Bishop of the American Carpathian Arch Diocese, ordered that all regular pastoral administration for St. Michael's be discontinued and prohibited any other priest or deacon from serving at the church. In response to Metropolitan Nicholas' order, the Church Board changed the locks on the church and threatened that they would obtain the services of defrocked or non-Orthodox priests to conduct services for St. Michael's.

On August 28, 1998, the Diocese filed a Complaint for Declaratory and Injunctive Relief seeking injunctive relief against the Church Board and prohibiting any person to officiate services at St. Michael's without the consent of Bishop Metropolitan Nicholas. A second count sought injunctive relief to prevent eviction of Father Salley from the church parsonage and a third count sought a declaratory judgment declaring null and void transactions taken by the Church Board to remove Father Salley from his position. On September 30, 1998, the trial court ordered that (1) no church services shall be held at St. Michael's Church absent the consent of Metropolitan Nicholas; (2) any action to evict Father Salley and/or his family from the parish residence shall be stayed until the resolution of the case; and (3) all other matters are continued until the final hearing on the permanent injunction and/or declaratory judgment.

Three other members of St. Michael's, individually and on behalf of St. Michael's, then filed a second Complaint on November 2, 1998, seeking equitable relief in the nature of an order that an annual meeting be held and requiring the Church Board to hold new elections because the present Church Board members who were attempting to remove Father Salley terms of office had expired. The Complaint also sought a declaratory judgment to remove certain individual members of the Church Board from office and disqualify them from holding office again because they had breached their fiduciary duties by taking actions not in accordance with the church constitution.[3]

Before the trial court, the resolution of whether the Church Board had the power to take action as they did was dependent on whether St. Michael's was hierarchical or congregational in nature. The resolution of that issue was determinative because a hierarchical church is a church which consists of an authoritarian body of religious officials organized by rank and jurisdiction and reposes determination of ecclesiastical issues in a certain body, the resolution by that body being determinative. *Poesnecker v. Ricchio,* 158 Pa.Cmwlth. 459, 631 A.2d 1097 (1993). In contrast, a congregational church is one in which the local congregation has full control and final authority over church matters within its own area prescribing action by majority vote of that particular congregation. *Id.* If the relationship between St. Michael's and the Diocese is hierarchical in nature, then the determinations regard-

Rusko, Marcy Hanna, Amy Rusko, George Kohut, Kathy Amick, Helen Gaydosh, Dan Kapcoe, Lena Gaydosh, Dot Holuta, Mike Gaydosh, and Bill Gaydosh. In the second action, Church Board members Fred Julock, Edward Gaydosh, Denise Rusko, Eleanor Berezansky, John Berezansky, Fred Sebastian, Barbara Sebastian, Donna Kuzemchak, Patricia Tatarko, Fred Knapik, Kathy Amick,

Helen Gaydosh, Michael Gaydosh, and William Gaydosh were named.

3. The trial court considered the August 28, 1998 and the November 2, 1998 actions together and issued a joint order and opinion on February 18, 1999 (filed on March 19, 1999) and issued an order on April 1, 1999, to clarify the February 18 order.

ing Father Salley made by the Diocese in accordance with its constitution would control; but if St. Michael's was congregational, the Church Board would have the discretion to remove him and otherwise manage the church in accordance with the local by-laws.

To support its position that St. Michael's is part of a hierarchical church, the Carpatho–Russian Church, the Diocese offered the testimony of Father Lawrence Berringer, an expert on the church's history and the constitution of the Diocese. He testified that the constitution of the Diocese prohibited parishes from firing their parish priest and that other remedies were available to parishes that were dissatisfied with their priest. Father Berringer also testified that the constitution did not allow a parish to leave the Diocese without the consent of the presiding bishop, and that local parish by-laws must be in conformity with the constitution and approved by the bishop before becoming valid. Also testifying for the Diocese, Dr. Louis Patsavos, a qualified expert in Canon Law, testified that the Orthodox Church was governed by Canon Law and was hierarchical in nature, governed by one bishop. Father Miloro, Chancellor of the Diocese and assistant to the Bishop, also testified as to the hierarchical nature of any Eastern Orthodox faith and further stated that St. Michael's had made annual contributions to the Diocese, as members of the Diocese were required to do, until 1998.

In support of its position that St. Michael's was a congregational church, independent of the Diocese, the Church Board, through the testimony of Church Board member John Berezansky, entered into evidence copies of the original 1907 charter of the Greek Catholic Church of Clymer,[4] copies of various deeds for church property, as well as copies of St. Michael's by-laws passed by the congregation in 1984 and subsequently revised in 1990 and 1997. The deeds established that property was transferred to the Greek Catholic Church

of Clymer in 1910 and 1911, to Reverend Gabriel Martyak, Apostolic Administrator of the Greek Catholic Church in the United States of America, in trust for the congregation of the Church of St. Michael's of Clymer for cemetery purposes in 1924, and that property was transferred to St. Michael's Orthodox Greek Catholic Church of Clymer in 1968 and 1975.

Relying on the corporate charter, deeds and by-laws of St. Michael's, the trial court held that St. Michael's was an independent congregation not under the jurisdiction of the Diocese and was permitted to make a determination as to the continued employment of Father Salley and his continued residence in the parish home. The trial court also held that until such time as the congregation determined whether Father Salley would be dismissed, he was to continue to act in the capacity as parish priest for the congregation and was to be paid for his services from the last date of payment until such time as a determination was made regarding his position at St. Michael's. Finally, the trial court ordered that an annual meeting be held at which time St. Michael's would hold elections for the Church Board. The Diocese then filed post-trial motions which were denied. This appeal followed.

On appeal, the Diocese contends that the trial court erred in finding that St. Michael's is congregational in nature based on the constitution, deeds and by-laws because clear legal precedent as well as uncontradicted testimony establishes that the Orthodox faith is hierarchical in nature and that St. Michael's as an Orthodox church is not free to leave the Diocese or to remove Father Salley. The Diocese contends that St. Michael's is a member of the Diocese and has been since 1935, continuing to pay dues until 1998 and accepting the appointment of priests from Metropolitan Nicholas. The Diocese also contends that its jurisdiction over St. Michael's was further established

4. The church was later named St. Michael's    Orthodox–Greek Catholic Church of Clymer.

by St. Michael's Church Board members' acceptance of the oath prior to taking office to "honorably and conscientiously fulfill all the duties and responsibilities of my office ... for the good of our parish and *our diocese.*" (Emphasis added). Because the relationship it has with St. Michael's is hierarchical in nature, the Diocese contends that St. Michael's Church Board does not have the authority to independently fire its priest or secede from the Diocese.

■■■ Whether St. Michael's is hierarchical or congregational in nature is a dispute that can be resolved by the civil courts. *Pilgrim Holiness Church v. Pilgrim Holiness Church of Athens Township,* 436 Pa. 239, 259 A.2d 870 (1969); *Atterberry v. Smith,* 104 Pa.Cmwlth. 550, 522 A.2d 683 (1987). In determining whether a church is hierarchical or congregational, a court may consider things such as a church's Articles of Incorporation and by-laws, as well as, in secular terms, religious documents, rituals and practices of the church, including whether the local organization accepted ministers appointed by diocesan executives or made payments to the funds of the general church. *See Archbishop Most Reverend Metropolitan Ambrose Senyshyn v. Karlak,* 462 Pa. 348, 341 A.2d 114 (1975); *Saint John the Baptist Greek Catholic Church of Allentown, Pa. v. Musko,* 448 Pa. 136, 292 A.2d 319 (1972); *St. John Chrysostom Greek Catholic Church of Pittsburgh v. Elko,* 436 Pa. 243, 259 A.2d 419 (1969). When a church is founded under the jurisdiction of a hierarchical authority, it must remain that way. Likewise, if a church is founded as an independent body beyond the jurisdiction of a hierarchical authority, it will remain independent. *See Karlak; Elko.*

The Church Board contends, as the trial court found, that its charter, deeds and by-laws establish that St. Michael's is an independent church. Pointing to the original 1907 corporate charter, the Church Board contends that St. Michael's was an independent church from the time of its inception. The charter recites the name of the church as the Greek Catholic Church of Clymer and states that, "the purpose of said corporation is the support of the public worship of Almighty God according to the faith, doctrine, discipline and usage of the Greek Catholic Church." The term "Greek Catholic," our Supreme Court has held, can refer to (1) an independent church; (2) an orthodox church under a patriarch; or (3) a uniate church (in union with Rome). *Karlak; Elko.* Not only can the term "Greek Catholic" church describe three different relationships, but the charter is of no probative value because no one disputes that at the time the charter was issued in 1907, St. Michael's was a uniate church making the charter irrelevant as to the relationship it established when it joined the Diocese.

The Diocese also contends that the trial court erred in relying on the deeds to property that St. Michael's owned in finding that St. Michael's was congregational in nature. The deeds in question transferred property for a cemetery, school, parsonage and the church itself. Three deeds for the original church site and the current church site, respectively, were recorded on August 2 and November 21, 1910 and September 7, 1911, and named the Greek Catholic Church of Clymer as grantee. A deed recorded in 1924 for the named Reverend Gabriel Martyak, Apostolic Administrator of the Greek Catholic Church in the United States of America, in trust for the congregation of the Church of St. Michael of Clymer for cemetery purposes, and two deeds recorded in 1968 and 1975, presently a parking lot and school property, respectively, named St. Michael's Orthodox Greek Catholic Church of Clymer as grantee. As stated above, the name "Greek Catholic Church" is ambiguous and is inconclusive in determining the intent of the parties, although the addition of the term "Orthodox" in the 1968 and 1975 deeds establish that they had joined an Orthodox church. As with the charter, the deeds recorded in 1910, 1911 and 1924 can

have no probative value as to the relationship it has with the Diocese because they were executed when they were a uniate church. Because nothing in the deeds describes in any way the relationship between St. Michael's and the Diocese, they offer little in making a determination as to whether St. Michael's is a hierarchical or congregational church.

Primarily, the trial court relied on the language contained in St. Michael's by-laws in making its determination that it was a congregational or independent church. Specifically, the Church Board relied on Article 34 of the by-laws, originally passed in 1984, to support its decision to secede from the Diocese. Article 34 provides:

The intent of these By-laws is to establish a church or parish with the right to terminate or revoke its denominational adherence. This is in accord with the history and practices of the church and parish which has always maintained its right, charter provisions to the contrary notwithstanding, to adhere to or revoke denominational affiliation at any time. In the event it is desired to change its denominational affiliation or to proceed independently, such action may be taken at the annual meeting, at which all provisions as to notice and quorum shall apply or at a special meeting, notice of which may be given in writing by any member at least ten (10) days in advance of the date fixed for the meeting.

If this by-law is valid, then there is no dispute that St. Michael's could secede from the Diocese if a vote of the congregation was in favor of the action. However, because once a hierarchical church, always a hierarchical church, we must examine the legal relationship it had with the Diocese prior to adoption of that by-law in 1984.

The current Diocesan constitution was adopted in 1973 and it authorized local churches to adopt by-laws, but further provided that the by-laws could not be inconsistent with the letter and spirit of the Orthodox Greek Catholic Church, the constitution and laws, and had to be accepted by the Bishop before they were valid. St. Michael's purported by-laws were first passed by the congregation in 1984 and Article 34 was in clear contradiction of the constitution and were never accepted by the Bishop as required by the constitution. If St. Michael's was under the jurisdiction of the Diocese at the time the by-laws were adopted in 1984, because they were never approved by the Bishop as required by the Diocesan constitution, the 1984 by-laws would be invalid and irrelevant in determining the governance of St. Michael's.

To determine whether St. Michael's accepted the jurisdiction of the Diocese when those by-laws were adopted, we must describe the relationship as it existed between the parties. Utilized by our Supreme Court in *Elko*, this approach, known as the "living-relationship test" and developed in *Judicial Intervention in Disputes Over The Use of Church Property*, 75 Harv.L.Rev. 1142, 1162, was highlighted by the Court, commenting that:

It seems far preferable to look to the lines of church authority as they existed just before the dispute impaired them. Courts using this approach have emphasized such factors as whether the local organization accepted ministers appointed by diocesan executives, regularly sent delegations to denominational convocations, received financial assistance from the general church, or made payments to the funds of the general church. This inquiry has the advantage of directing the court's attention to the prevailing understanding within the Church and of eliding difficult questions of the construction of ecclesiastical documents.

436 Pa. at 250, 259 A.2d at 422.

In 1907, St. Michael's was incorporated as a non-profit corporation for the purpose of worshiping God according to the faith, doctrine and discipline of the Greek Catholic Church in union with the Holy See at

Rome, recognizing the Pope of Rome as the spiritual head of the Church. *Gabster v. Mesaros,* 422 Pa. 116, 220 A.2d 639 (1966).[5] From the time of its incorporation until 1935, St. Michael's conducted all of its affairs, both spiritual and temporal, as a Greek Catholic Church. *Id.* In 1935, when The Most Reverend Bishop Orestes P. Chornock[6] founded a denomination known as the Carpatho–Russian Greek Catholic Orthodox Church of North and South America, later renamed the American Carpatho–Russian Orthodox Greek Catholic Diocese of the United States of America,[7] St. Michael's broke its ties with the Roman hierarchy to follow Bishop Chornock into the new denomination. *Id.*

■ In 1947, the Diocese unanimously adopted its first constitution. At that time, it is undisputed that St. Michael's was a dues paying member of the Diocese and continued as such in each of the subsequent years in which amendments to the constitution were made, including when the 1984 by-laws were adopted. From 1935, St. Michael's accepted the assignment of priests by the Diocese and continued to worship according to the discipline of the Orthodox–Greek Catholic faith which is undisputedly hierarchical in nature. In breaking its ties with the Greek Catholic Church, which recognized the Pope of Rome as the spiritual head of the church, in order to join Bishop Chornock's denomination, which recognized the Ecumenical Patriarchate of Constantinople as its spiritual leader, St. Michael's left one hierarchical church in favor of another, recognizing a different spiritual leader. Because St. Michael's paid membership fees and accepted priests assigned by the Diocese and otherwise operated without any difficulties under the Diocese for over 63 years, St. Michael's is a member of the Diocese and that relationship is hierarchical in nature.

Because St Michael's relationship with the Diocese is hierarchical in nature, it cannot secede from the Diocese, and, accordingly, must carry out its affairs in accordance with Diocesan governance. As to Father Salley's termination as pastor of the parish, that must be carried out in accordance with the procedures set forth in the Diocesan constitution, and because that is an internal church matter, we will vacate that portion of the trial court's order ordering an election by the congregation to determine whether he will be discharged or not. *Presbytery of Beaver–Butler of the United Presbyterian Church v. Middlesex Presbyterian Church,* 507 Pa. 255, 489 A.2d 1317, *cert. denied.,* 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985)[8] (where the resolution of an issue involves questions of discipline, faith, ecclesiastical rule, custom or law, a civil court must defer to the highest church judicatory.) As to the election of new Church Board members, because all the parities agree that the present Church Board members' terms have expired and a new election is needed, we affirm that portion of the trial court's order directing such an election be held. An appropriate order will be entered.

---

5. In *Gabster,* members of the congregation of the Greek Catholic Church of Clymer, St. Michael's, sought to enjoin the bishop, church corporation and parish priest from diverting church property from use other than for worship according to the faith, doctrine and discipline of the denomination that founded the church. Our Supreme Court held that the relief sought by the members of the congregation was precluded by laches.

6. Bishop Orestes P. Chornock was the predecessor to Metropolitan Bishop Nicholas.

7. The new denomination was no longer in union with Rome but recognized the ecclesiastical jurisdiction of the Ecumenical Patriarch of Constantinople (Istanbul).

8. However, we note that a civil court may have the power to determine Father Salley's right to the parsonage. *See Kaminski v. Hoynak,* 373 Pa. 194, 95 A.2d 548 (1953).

### *ORDER*

AND NOW, this 1st day of March, 2000, the portion of the orders of the Court of Common Pleas of Indiana County, Pennsylvania, dated February 18, 1999 and April 1, 1999, Nos. 51707 C.D.1998 and 12222 C.D.1998, ordering an election by the congregation to determine whether Father Salley will be discharged is vacated and the portion of those orders directing an election for a new Church Board is affirmed.