In re The LORD'S NEW CHURCH
Which is Nova Hierosolyma.

Appeal of Feodor Pitcairn, Laren
Pitcairn and Miriam Pitcairn
Mitchell.

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2002.

Decided Feb. 4, 2003.

Reargument Denied March 25, 2003.

Arlin M. Adams, Philadelphia, for appellants.

C. Clark Hodgson, Jr., Philadelphia, for appellee.

Before COLINS, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and COHN, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

Feodor Pitcairn, Laren Pitcairn and Miriam Pitcairn Mitchell (Appellants) appeal from the order of the Orphans' Court Division of the Court of Common Pleas of Montgomery County that denied the exceptions they filed to a decree dismissing their petition seeking judicial review of actions taken by four directors of the non-profit corporation The Lord's New Church Which is Nova Hierosolyma (the Corporation), Leonard Fox, Paul Booth, Richard Rech and Edward Arrington (Appellees); the removal of those directors; a new election; and the appointment of a temporary custodian. We vacate the order, in part, and remand with instructions.

We affirm the trial court in major part in this matter as its opinion relates to each of the issues raised except the question of the transfer of certain funds by the Appellees from the Corporation to an organization known as the International Council of Priests (ICP).

The Lord's New Church Which is Nova Hierosolyma is the name of a non-profit corporation created in 1939 to promote and maintain a Swedenborgian church founded by Theodore Pitcairn. The church itself is unincorporated and consists of approximately 1,000 members in Bryn Athyn, Pennsylvania, Kwa–Zulu Natal, South Af-

rica and The Netherlands.[1] This case arose from a reorganization of the church that was proposed in the mid–1990s by Petitioner Feodor Pitcairn. The history of that reorganization can best be described as convoluted, with each side accusing the other of attempting to take over the Corporation and its assets for its own personal gain. The struggle finally prompted the Appellant's filing, in July of 1999, of a petition in Montgomery County's Orphans' Court alleging the existence of a conspiracy on the part of the Appellees to take control of the Corporation and its substantial assets. The petition asked for the review of corporate action pursuant to Section 5793 of the Non–Profit Corporation Law, 15 Pa.C.S. §§ 5101–6162 (the Law), the removal of directors pursuant to Section 5726, and for the appointment of a custodian of the corporation pursuant to Section 5764. The trial court entered an order preserving the *status quo* before hearing the petition. After the hearing the trial court dismissed the petition even though it acknowledged that the Appellees "had employed some heavy-handed tactics" but that their actions had not "run afoul of the Non–Profit Law so as to justify ... imposing the drastic remedy of judicial supervision of the corporation's affairs." (Trial court opinion, p. 23) The Appellants filed exceptions, which were heard by an *en banc* panel consisting of only two judges. The panel denied the exceptions but in a dissenting opinion one of the judges argued that a special meeting of the Corporation's membership should have been ordered. The other opined that such a meeting would surely take place without the court's intervention once the *status*

*quo* order was lifted. This was the only disagreement between the two. This appeal followed. The Appellants ask us to vacate the decree of the trial court, direct the Corporation to hold a special meeting, order the Appellees to return certain funds withdrawn from the Corporation, and direct the trial court to take such other action as may be consistent with our decision.

■ The question we consider is whether the actions of the Appellees complained of by the Appellants are sufficient to trigger the intervention of the Orphans' Court into the affairs of the Corporation.[2]

The petition in this matter was filed pursuant to the following provisions of the Law:

**§ 5726. Removal of directors**

**(c) By the court.**—The court may, upon petition of any member or director, remove from office any director in case of fraudulent or dishonest acts, or gross abuse of authority or discretion with reference to the corporation, or for any other proper cause, and may bar from office any director so removed for a period prescribed by the court. The corporation shall be made a party to such action.

15 Pa.C.S. § 5726(c)

**§ 5764. Appointment of custodian of corporation on deadlock or other cause**

**(a) General rule.**—The court, upon application of any member, may appoint one or more persons to be custodians of and for any nonprofit corporation when it is made to appear:

---

1. The Church in Holland is supported by a separate fund under the control of two of the Respondents, Booth and Rech.

2. Our standard of review is to determine whether the trial court's findings are sup-

ported by substantial evidence, whether an error of law was committed, or whether the trial court abused its discretion. *Kelso Woods Ass'n, Inc. v. Swanson*, 692 A.2d 1132 (Pa. Cmwlth.1997).

. . .

(2) that any of the conditions specified in section 5981 (relating to proceedings upon petition of member, etc.) exists with respect to the corporation.

15 Pa.C.S. § 5764(a)(2)

At the hearing the Appellants attempted to prove that the conduct of the Appellees constituted illegal, oppressive, or fraudulent acts of directors or those in control of a corporation and that they misapplied or wasted corporate assets, all in violation of the "conditions specified in section 5981(relating to proceedings upon petition of member, etc.)" referred to above in Section 5764(a)(2).

■ The trial court determined that much of what the Appellants complained of in the way of financial irregularities was due to missing information for which records had never been maintained rather than information that had been hidden. Two individuals who examined the records of the corporation testified that they were not impressed with the way the records were compiled and maintained but that they were unable to uncover any irregularities that might constitute violations of the Law. A significant finding was that the records found to be lacking in detail were generated during a period when one of the *appellants* was in charge of the board of directors. Also significant in the eyes of the trial court was the fact that no one who demanded and received records from the board pursuant to Section 5508(b) of the Law was sufficiently dissatisfied to pursue his rights under subsection (c).[3]

■ The Appellants complained that the Appellees had manipulated the membership of the board in their favor by approving favorable candidates and impeding the approval of those who were unfavorable. The trial court found the testimony on this issue, even from the Appellants, to be confusing and contradictory and concluded properly that the process by which membership on the board was approved or denied did not constitute oppressive or abusive conduct.

The trial court conducted a thorough hearing. The Appellants were given ample opportunity to prove their allegations, and the Appellees were given ample opportunity to refute them. The trial court did its homework; its opinion contains a thorough, well-reasoned discussion of the case. The closing paragraph of its Discussion of the issues sums up the trial court's deci-

---

**3.** 15 Pa.C.S. § 5508(c) provides in pertinent part:

§ 5508. Corporate records; inspection by members

(c) Proceedings for the enforcement of inspection by a member.—If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a member or attorney or other agent acting for the member pursuant to subsection (b) or does not reply to the demand within five business days after the demand has been made, the member may apply to the court for an order to compel the inspection. The court shall determine whether or not the person seeking inspection is entitled to the inspection sought. The court may summarily order the corporation to permit the member to inspect the membership register and the other books and records of the corporation and to make copies or extracts therefrom; or the court may order the corporation to furnish to the member a list of its members as of a specific date on condition that the member first pay to the corporation the reasonable cost of obtaining and furnishing the list and on such other conditions as the court deems appropriate. Where the member seeks to inspect the books and records of the corporation, other than its membership register or list of members, he shall first establish:

(1) that he has complied with the provisions of this section respecting the form and manner of making demand for inspection of such document; and

(2) that the inspection he seeks is for a proper purpose.

sion. We quote it with approval except as we explain below.

We must reiterate that this was a close call. It is clear that the respondents, at times, utilized heavy-handed tactics in this struggle, and that some shifting of loyalties among various personages clouded the issues. However, we conclude that the petitioners did not produce sufficient evidence to convince the court that the drastic remedy of judicial supervision over the corporation is appropriate. Instead, the corporation will be able to conduct its own affairs in the usual course. We anticipate the return to normalcy will include strict adherence to the provisions of the bylaws, articles of incorporation and nonprofit corporation law. Furthermore, because the constraints of the *status quo* order will now be lifted, the open issues will be played out to their appropriate end.

Trial court opinion, p. 23

We disagree with the trial court only on the following issue. As part of their prayer for relief the Appellants asked the trial court, pursuant to 15 Pa.C.S. § 5793,[4] to review and set aside as null and void "The June 23, 1999 resolution to create a fund of not more than $1,500,000 for discretionary use of the ICP." (Petition, p. 18). The transfer of those funds occurred after a majority of the members of the Corporation called for a special meeting of the board in a letter from their counsel dated May 28, 1999. The stated purpose of that

meeting was to consider the way the Corporation had been managed and to consider the removal and replacement of directors. The board, on two days notice, called a special meeting to be held on June 23, 1999 for the ostensible purpose of scheduling the meeting called for by the membership. Also included on the agenda, however, was an item described only as "ICP Funding." When this item came before the board, a majority of the board voted to transfer the sum of $1.5 million from the Corporation to ICP. The ICP is composed of four members of the board; the $1.5 million was placed in a fund under their sole control. The special meeting of the membership was never called due to the *status quo* order issued by the trial court.

The trial court referred to this transfer of funds as "[t]he closest thing to a smoking gun in this case" (Trial court opinion, p. 18), but it refused to consider the propriety of the transfer, deferring instead to the decision of the board in reliance on *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), and our decision in *Poesnecker v. Ricchio*, 158 Pa.Cmwlth. 459, 631 A.2d 1097 (1993), *petition for allowance of appeal denied*, 538 Pa. 651, 647 A.2d 905 (1994), *cert. denied*, 513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 632 (1995). *Serbian Orthodox* held that the civil courts are bound to accept the decisions

---

4. **§ 5793 Review of contested corporate action**

    (a) **General rule.**—Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action.

    (b) **Powers and procedures.**—The court may make such orders in any such case as

may be just and proper, with power to enforce the production of any books, papers and records of the corporation and other relevant evidence which may relate to the issue. The court shall provide for notice of the pendency of the proceedings under this section to all persons affected thereby. If it is determined that no valid corporate action has been taken, the court may order a meeting to be held in accordance with *section 5792* (relating to proceedings prior to corporate action).

of the highest judicatory bodies of religious organizations on matters of discipline, faith, internal organization, or ecclesiastical rule, custom or law. However, in *Poesnecker*, 631 A.2d at 1103, we held

> [C]ivil courts may resolve disputes involving churches that do not require a determination of ecclesiastical issues ... [C]ourts may apply principles of law which are religiously neutral, such as statutes governing Pennsylvania nonprofit corporations.

■ We cannot agree with the trial court that "[w]e would have to determine that the ICP and/or its individual members were not part of the church before we could rule that the transfer was an improper diversion of corporate assets." (Trial court opinion, p. 18). The transfer of funds by members of the board of a corporation established to support a church does not become an "ecclesiastical issue" simply because the funds are transferred to an ecclesiastical body, even if some or all of the members of such a board hold ecclesiastical titles. The resolution of the dispute regarding the transfer of the $1.5 million does not require a court to determine any ecclesiastical issue. The propriety of the transfer of the $1.5 million was a pure question of corporate law that should have been addressed by the trial court.

■ The meeting at which the transfer of funds was voted on and approved was a special meeting of the board called, on two days notice, for the ostensible purpose of scheduling a meeting called for by the membership which would examine the way the corporation had been managed and address the removal and replacement of directors. The special meeting called for by the members was never held because the action which resulted in this appeal was filed and a *status quo* order was issued. The fact that the meeting objected to here was held on two days notice means

that the meeting was held in violation of 15 Pa.C.S. § 5703(b) that requires that written notice of a special meeting of the board of a nonprofit corporation be given to each director or member of that board "at least five days before the day named for the meeting." Any action taken at that meeting was, therefore, *ultra vires* and void.

Accordingly, we affirm the opinion of the Court of Common Pleas of Montgomery County in this matter except to the extent that it addresses the circumstances surrounding the special meeting of the board held on June 23, 1999. We vacate the order as it may apply to those circumstances and we remand this matter to the trial court with instructions to order, pursuant to the powers granted to it under 15 Pa.C.S. §§ 5792 and 5793, a meeting of the membership as called for by the members in their letter from counsel dated May 28, 1999. The notice of the meeting shall comply in all ways with 15 Pa.C.S. § 5704 which requires, among other things, that members be given no less than five days notice of the meeting and that the notice "shall specify the general nature of the business to be transacted." The purpose of that meeting shall be to consider the issues stated by the members in their May 28, 1999 letter and any other business that may be lawfully transacted at such a meeting. The order of the trial court preserving the *status quo* in this matter dated May 1, 2002 shall remain in effect until the meeting of the membership ordered by the trial court is convened.

Judge SMITH–RIBNER and Judge LEADBETTER dissent.

### *ORDER*

AND NOW, this 4th day of February 2003, we affirm the opinion of the Court of Common Pleas of Montgomery County in this matter dated December 4, 2001, except to the extent that it addresses the

circumstances surrounding the special meeting of the board held on June 23, 1999. We vacate the order as it may apply to those circumstances, and we remand this matter to the trial court with instructions to order, pursuant to the powers granted to it under 15 Pa.C.S. §§ 5792 and 5793, a meeting of the membership as called for by the members in their letter from counsel dated May 28, 1999. The notice of the meeting shall comply in all ways with 15 Pa.C.S. § 5704 which requires, among other things, that members be given no fewer than five days notice of the meeting and that the notice "shall specify the general nature of the business to be transacted." The purpose of that meeting shall be to consider the issues stated by the members in their May 28, 1999 letter and any other business that may lawfully be transacted at such a meeting.

The order of the trial court preserving the *status quo* in this matter dated May 1, 2002 shall remain in effect until the meeting of the membership ordered by the trial court is convened.

Jurisdiction is relinquished.