IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony J. Samango, Jr.,                   :
                        Appellant          :
                                           :   No. 1059 C.D. 2021
          v.                               :   Submitted: August 12, 2022
                                           :
Squires Golf Club                          :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                    FILED: January 23, 2023

          Anthony J. Samango, Jr. (Samango) appeals from the Court of
Common Pleas of Montgomery County's (trial court) denial of his petition for a
preliminary injunction, entered August 10, 2021. Samango contends that the trial
court lacked reasonable grounds to deny him relief. After careful review, we affirm.

## I. BACKGROUND[1]

          Samango is a former member of Squires Golf Club (Squires).[2] On June
11, 2021, following several incidents with other members, Squires notified Samango
that it would convene a disciplinary hearing to consider his expulsion, suspension,
or other sanction.[3] Squires scheduled the hearing for June 15, 2021. On June 14,

---

[1] Unless otherwise stated, we adopt the statement of facts from the trial court's opinion, which is supported by the record. *See* Trial Ct. Op., 11/3/21, at 1-4.

[2] Squires is a Pennsylvania nonprofit corporation. *See* Pennsylvania Nonprofit Corporation Law of 1988 (Nonprofit Law), 15 Pa. C.S. §§ 5101-6146.

[3] In early June, Samango tossed a glass of water on Frank Ventresca. *See* Notes of Testimony (N.T.) Hr'g, 8/10/21, at 21-23. Shortly thereafter, Samango tossed the contents of a bottle of water on Anthony Lepore. *See id.* at 22-23. An additional incident involving an "out of town" member also occurred at this time. *See id.* at 78-79, 87-88.

2021, Samango declined the opportunity to attend the meeting, writing that he "did not wish to take time away from your board meeting to present a defense for which I have none." Trial Ct. Op. at 1. Thereafter, following its scheduled hearing, Squires expelled Samango from the club and promptly notified Samango of its decision.

On July 7, 2021, Samango filed a complaint in civil action against Squires, seeking declaratory and injunctive relief including the reinstatement of his membership. On July 8, 2021, Samango filed the instant petition for a preliminary injunction, requesting his immediate reinstatement and, further, enjoining Squires from interfering with Samango's membership rights and privileges. According to Samango, Squires did not grant him sufficient notice of his disciplinary hearing to mount an appropriate defense, which rendered his termination void and *ultra vires* as matter of law. *See* Pet. for Prelim. Inj., 7/8/21, at 9-14.[4] Additionally, Samango claimed that he had been treated in a discriminatory manner because his offenses had been punished more severely than other members' offenses. *Id.* Following a hearing on August 10, 2021, the trial court denied Samango's petition for a preliminary injunction.[5]

---

[4] Squires' By-Laws provide for five days' written notice of Board meetings. *See* Complaint, Ex. A (Squires' Am. & Restated By-Laws), § 8-3; *see also* 15 Pa. C.S. § 5703(b) (requiring five days' notice for special meetings).

[5] At the hearing, Samango testified and characterized the water-tossing incidents as "harmless pranks" and insisted that there was an "outside group that had some old grudges" which had led to his expulsion from Squires, rather than his suspension or written warning. N.T. Hr'g, 8/10/21, at 26-30, 54-55. Samango further argued that other, more serious conduct from other members had not resulted in expulsions. *Id.* at 65. Samango also presented testimony from Lenny Feinberg, a Board member at Squires. Feinberg attended the disciplinary meeting, where a "heated, unpleasant, difficult" discussion was held regarding Samango and his conduct. *See id.* at 107-13. Feinberg stated that there was "bad blood" between Samango and some of the Board members, but also noted that Samango was "rude . . . unnecessarily so. He seemed to have a chip on his shoulder . . . ." *Id.* at 113-14. The trial court made no express findings relevant to this testimony. *See generally* Trial Ct. Op. Squires did not present testimony or evidence. N.T. Hr'g, 8/10/21, at 124.

Samango timely appealed, and the trial court issued an opinion. The court concluded that Samango had waived any notice requirement after informing the Board that he would not attend the disciplinary hearing. Trial Ct. Op. at 2. Further, the court concluded that Samango's allegations of harm were speculative and that expulsion was not irreparable harm that could not be compensated with damages. *Id.* at 3. Accordingly, Samango failed to show his entitlement to injunctive relief. *Id.*

## II. ISSUE

On appeal, Samango contends that there were no reasonable grounds for the trial court to deny his preliminary injunction. In support of this contention, Samango presents two arguments. First, Samango points to certain notice requirements contained in Squires' By-Laws and the Nonprofit Law, which seemingly require a minimum five days' notice for special meetings such as a disciplinary proceeding. *See* Appellant's Br. at 15-18. Because he was only provided four days' advance notice of his disciplinary hearing, Samango claims that the Board decision was voidable as an *ultra vires* act. *Id.* Second, Samango contends that he introduced uncontroverted evidence demonstrating his right to a preliminary injunction. *Id.* at 19-22.

In response, Squires contends that Samango waived his notice argument when he declined to attend the hearing and, further, expressly conceded that he lacked a defense to the allegations. Appellees' Br. at 10-12, 17-20. Additionally, Squires maintains that Samango's testimony is insufficient to establish his right to a preliminary injunction. *See id.* at 16-24.

3

## III. ANALYSIS[6]

"[A] preliminary injunction is intended to preserve the status quo and prevent imminent and irreparable harm that might occur before the merits of the case can be heard and determined." *Lindeman v. Borough of Meyersdale*, 131 A.3d 145, 151 (Pa. Cmwlth. 2015). It is well settled that "[a] preliminary injunction is an extraordinary remedy[.]" *Hart v. O'Malley*, 676 A.2d 222, 223 n.1 (Pa. 1996).

For a preliminary injunction to issue, a petitioner must establish six, essential prerequisites. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003). The petitioner must demonstrate that (1) "an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages"; (2) "greater injury would result from refusing an injunction than from granting it" and that "issuance of an injunction will not substantially harm other interested parties in the proceedings"; (3) the injunction "will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct"; (4) "the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits"; (5) the injunction sought is "reasonably suited to abate the offending activity"; and finally, (6) the injunction "will not adversely affect the public interest." *See id.* at 1001 (citations omitted).

Upon review, appellate courts do not inquire into the merits of the controversy, but only "examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Summit Towne Ctr., Inc.*, 828

---

[6] We review a trial court order refusing or granting a preliminary injunction for an abuse of discretion. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003) (citations omitted). Only where "it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." *Id*.

A.2d at 1000. Thus, if any of the six, essential prerequisites are not satisfied, the trial court may deny relief. *See id.* at 1001.

## A. Notice of the Disciplinary Hearing

Samango asserts that he did not receive adequate notice of his disciplinary hearing, which rendered his expulsion void and *ultra vires*. *See* Appellant's Br. at 15. According to Samango, this fact alone entitles him to an injunction. *See* Appellant's Br. at 16-17.[7]

We disagree. Adequate notice of proceedings does not provide independent grounds for an injunction. Case law is clear that there are six, essential prerequisites that must be met for a trial court to grant injunctive relief; adequate notice is not one of them. *See Summit Towne Ctr., Inc.*, 828 A.2d at 1000-01. Therefore, regardless of whether Squires' notice to Samango of his disciplinary

---

[7] In support, he cites *In re Lord's New Church Which Is Nova Hierosolyma*, 817 A.2d 559 (Pa. Cmwlth. 2003) (*Lord's New Church*), *rev'd*, 826 A.2d 863 (Pa. 2003), to argue that the five-day notice requirement of the Nonprofit Law is mandatory. In *Lord's New Church*, a church called a special meeting on two days' notice for the ostensible purpose of considering the removal and replacement of directors with an agenda item described as "ICP funding." *Id.* at 563. Instead, four members of that group moved $1.5 million to a fund under their sole control; the special meeting originally called for was never held due to a *status quo* order issued by the trial court. *Id.* On appeal, this Court held that the meeting violated the five-day notice requirement of the Nonprofit Law and that the meeting was *ultra vires* and void. *Id.* at 564. However, the Supreme Court of Pennsylvania subsequently reversed this Court's holding in relevant part. *See Lord's New Church*, 826 A.2d 863. Accordingly, this case is inapplicable.

The second case upon which Samango relies is also inapposite. In *Quaker City Yacht Club v. Williams*, 429 A.2d 1204, 1206 (Pa. Cmwlth. 1981), the issue was whether the member in question had received notice of his suspension at all, where the by-laws required "reasonable notice." *Id.* at 1206. In that case, the member denied receiving notice and there were no records to show that he had received notice. *Id.* Accordingly, we agreed with the trial court that the member was not given reasonable notice in accordance with the by-laws. *Id.* In the instant case, there is no question that Samango both received and responded to notice of the hearing.

Accordingly, Samango has not cited to any law upon which we may rely to support the proposition that there is a black letter rule regarding the five-day notice period. *See*, *e.g.*, *Lord's New Church*, 826 A.2d at 863; *Quaker City Yacht Club,* 429 A.2d at 1206.

5

hearing was adequate, Samango must still establish each of these six requirements to secure preliminary injunctive relief. *See id.* at 1001.

## B. Immediate and Irreparable Harm

Samango contends that he is entitled to injunctive relief because he has established all six grounds required by law. *Summit Towne Ctr., Inc.*, 828 A.2d at 1000-01. With regard to the first ground, immediate and irreparable harm, Samango baldly concludes that the loss of his membership and access to a "one-of-a-kind golf club" is irreparable, immediate, and incapable of compensation by money damages. Appellant's Br. at 19-20. He contends that Squires is where he "spent most days, meals, visited with friends, played golf, did business, and hung out with his son." *Id*. at 14. Samango does not provide further characterization or description of his visits, golf, or business conducted at the club. *See generally* Appellant's Br. at 14-20.

The trial court observed that "[b]eing expelled from a private social club is not, generally, the kind of irreparable harm that this [c]ourt's injunctive powers should be used to address." Trial Ct. Op., 11/3/21, at 4. The trial court further noted that to the extent Samango could establish a wrong in any "legally cognizable way," he could seek an appropriate remedy, including money damages, in his underlying action. *Id*.

We agree that on this record, Samango has failed to establish that he will suffer immediate, irreparable harm that cannot be compensated by money damages. *See Summit Towne Ctr., Inc.*, 828 A.2d at 1000-01. At best, he will be prevented from attending a private club during the pendency of this matter and can continue to golf and socialize with his friends and family elsewhere; at worst, the court or a jury will ultimately find in favor of Squires and he will be forever barred

6

from membership.  Any potential loss of business as a result of his inability to attend Squires is exactly within the realm of money damages that Samango should be able to prove should this matter proceed to final hearing on the merits.

## IV. CONCLUSION

A trial court has apparently reasonable grounds for denial of injunctive relief where *any* of the six, essential prerequisites are not satisfied.  *Summit Towne Ctr., Inc.*, 828 A.2d at 1000 (emphasis added).  Here, Samango has failed to demonstrate that, without injunctive relief, he will suffer irreparable harm that cannot be compensated by money damages.  Accordingly, we affirm the trial court's order denying injunctive relief.

LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthony J. Samango, Jr., | : | |
| Appellant | : | |
| | : | No. 1059 C.D. 2021 |
| v. | : | |
| | : | |
| Squires Golf Club | : | |

# **O R D E R**

AND NOW, this 23rd day of January, 2023, the August 10, 2021 order of the Court of Common Pleas of Montgomery County is AFFIRMED.


_____
LORI A. DUMAS, Judge